THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

AUG - 4 2010

CLERK, U.S.
Richmond

|  |  |  |
|---|---|---|
| Capital One Bank (USA), N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 3:10CV547 |
| | ) | |
| FR Lewis Financial Services, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Capital One Bank (USA), N.A. ("Capital One"), by counsel, brings this Declaratory Judgment action against FR Lewis Financial Services, Inc. ("FR Lewis") and alleges as follows:

### NATURE OF THE ACTION

1.      This is an action for declaratory judgment seeking the determination of an actual controversy ripe for adjudication between Capital One and FR Lewis.

2.      Capital One seeks a declaration, pursuant to the provisions set forth in the Affinity Card Broker Agreement, effective November 30, 2009, with amendments effective January 13, 2010, February 3, 2010, and April 14, 2010 (collectively, the "Broker Agreement") between Capital One and FR Lewis, that:

> a.  Capital One is not obligated to pay any Broker Bounty Payments in connection with organizations that are not included on the Affinity Exclusivity List;
>
> b.  Capital One is only obligated to pay Broker Bounty Payments of $15, not $25, per activated and used credit card account to FR Lewis in connection

1

with organizations that are included on the Affinity Exclusivity List
attached as Exhibit A to the Broker Agreement (the "Affinity Exclusivity
List");

c.  The Broker Bounty Payments are only owed for a period of four (4), not
    five (5), years following termination of the Broker Agreement; and

d.  Capital One is not required to pay FR Lewis any Broker Earn Out Bonus
    payments following termination of the Broker Agreement.

## PARTIES

3.     Capital One is a national banking association organized under federal law with its
principal place of business located in the Commonwealth of Virginia.

4.     FR Lewis is a corporation organized under the laws of, and with its principal
place of business located in, the State of Delaware.

## JURISDICTION AND VENUE

5.     This is a declaratory judgment action brought pursuant to Fed. R. Civ. P. 57 and
28 U.S.C. § 2201 for a declaration of rights of the parties under the Broker Agreement between
the parties.

6.     This Court has jurisdiction under 28 U.S.C. § 1332(a) because this action arises
between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive
of interest and costs.

7.     Venue is proper under 28 U.S.C. § 1391(a) because a substantial part of the
events giving rise to the controversy occurred in this judicial district.  Venue also is proper in this
Court because the Broker Agreement contains a mandatory forum selection clause whereby the
parties agreed that venue was proper in, and all disputes arising from the agreement must be

brought in, the U.S. District Court for the Eastern District of Virginia, Richmond Division, or the

Circuit Court of the County of Henrico, Virginia.

## ACTUAL CONTROVERSY PURSUANT TO 28 U.S.C. § 2201(a)

8.      Pursuant to 28 U.S.C. § 2201(a), there exists an actual controversy between the

parties.

9.      FR Lewis, through counsel, has communicated a position that:

    a.   Eleven (11) additional affinity groups should be added to the Affinity

       Exclusivity List beyond the ten (10) affinity groups the parties

       contractually agreed to include on the Affinity Exclusivity List;

    b.   FR Lewis is entitled to Broker Bounty Payments in the amount of $25.00

       per credit card account for the eleven (11) organizations that are not

       included on the Affinity Exclusivity List and for those ten (10) affinities

       currently included on the Affinity Exclusivity List;

    c.   FR Lewis is entitled to said Broker Bounty Payments for a period of five

       (5) years following termination of the Broker Agreement; and

    d.   FR Lewis is entitled to Broker Earn Out Bonus payments after

       termination of the Broker Agreement.

10.      Capital One maintains that it is not obligated to pay any Broker Bounty Payments

in connection with any organizations that are not included on the Affinity Exclusivity List and

that it is not obligated to pay any Broker Earn Out Bonus payments after termination of the

Broker Agreement.  Instead, Capital One contends that in accordance with the Broker

Agreement, it only is obligated to pay Broker Bounty Payments of $15 per activated and used

credit card account associated with any of the ten (10) affinities on the Affinity Exclusivity List, for a period of four (4) years following termination of the Broker Agreement, and nothing more.

## FACTS

11.     On November 30, 2009, Capital One and FR Lewis entered into an Affinity Card Broker Agreement whereby FR Lewis was granted a right to market Capital One's Affinity Card Program only to the pre-approved organizations on the Affinity Exclusivity List, and Capital One agreed to issue customized consumer-purpose credit cards to those organizations' members for fundraising or other purposes. Under the Capital One Affinity Card Program, members of an organization, a university's alumni association for example, can receive a Capital One credit card with their organization's logo on it.

12.     Under the Affinity Card Broker Agreement, Capital One agreed to compensate FR Lewis for each credit card account activated and used by members of the pre-approved organizations to whom FR Lewis was allowed to market. Specifically, Capital One agreed to pay FR Lewis a Broker Bounty Payment of $25 per credit card account activated and used during the Initial Term of the Broker Agreement, or $15 per credit card account activated and used subsequent to the Initial Term, and for four (4) years following the termination of the Broker Agreement.

13.     Exhibit A to the Affinity Card Broker Agreement was the original Affinity Exclusivity List and it contained the names of four (4) organizations.

14.     The Affinity Exclusivity List represented the only organizations to which Capital One originally granted FR Lewis permission to market the Affinity Card Program and the only organizations in connection with which Capital One originally agreed to pay FR Lewis a Broker Bounty Payment under the Affinity Card Broker Agreement.

15.     On or about January 13, 2010, Capital One and FR Lewis executed an amendment that superseded and replaced the original Affinity Exclusivity List.

16.     As a result of the January 13, 2010 amendment, the number of organizations on the Affinity Exclusivity List increased from four (4) to six (6).

17.     On or about February 3, 2010, Capital One and FR Lewis executed an amendment that superseded and replaced the Affinity Exclusivity List again.

18.     As a result of the February 3, 2010 amendment, the number of organizations on the Affinity Exclusivity List increased from six (6) to eight (8).

19.     On or about April 14, 2010, Capital One and FR Lewis executed an amendment that, among other things, contained another revised Affinity Exclusivity List, which superseded and replaced the list contained in the February 3, 2010 amendment.

20.     As a result of the April 14, 2010 amendment, the number of organizations on the Affinity Exclusivity List increased from eight (8) to ten (10).

21.     The amended Affinity Exclusivity List attached to the April 14, 2010 amendment represents the ten (10) organizations to which Capital One currently has granted FR Lewis permission to market the Affinity Card Program and the only organizations for which Capital One currently has agreed to pay FR Lewis a Broker Bounty Payment under the Broker Agreement should the organization and Capital One enter into an Affinity Card Program and affinity credit cards are issued by Capital One and activated and used by the organization's members.

22.     Under Section 5.1 (c) of the Broker Agreement, Capital One and FR Lewis must mutually agree on whether to add any further organizations to the Affinity Exclusivity List.

23.    In the course of the relationship between Capital One and FR Lewis under the Broker Agreement, FR Lewis from time to time has presented Capital One with the names of new organizations that it proposed be added to the Affinity Exclusivity List.  In such cases, Capital One has analyzed the prospective additional organizations before agreeing to add them to the Affinity Exclusivity List.

24.    The addition of affinities to the Affinity Exclusivity List is a formal process that requires significant internal analysis by Capital One and formal internal Capital One approval. This extensive review is central to ensure that Capital One would like to, and is authorized to, provide a proposal to prospective affinities.

25.    When, like in January, February, and April 2010, Capital One agrees to add new organizations to the Affinity Exclusivity List, the parties execute a formal amendment to the Affinity Exclusivity List.

26.    To date, FR Lewis contends that eleven (11) new organizations should be added to the current Affinity Exclusivity List, which presently contains only ten (10) organizations.

27.    To date, Capital One has not agreed to amend the current Affinity Exclusivity List to add any of FR Lewis' proposed additions.

28.    On June 30, 2010, Capital One terminated the Broker Agreement with FR Lewis.

29.    Capital One cited the following misconduct by FR Lewis in its written notice of termination.

      a.    FR Lewis sent solicitation materials to the Nebraska Alumni Association, the University of Nevada Las Vegas Alumni Association, and the Chicago Bar Association without Capital One's approval.

      b.    The solicitation materials sent by FR Lewis to these organizations was not pre-approved by Capital One and constituted a misuse of Capital One's marketing materials.

c. As part of its investigation into FR Lewis' solicitation practices, Capital One discovered that emails provided by FR Lewis to Capital One were altered in an attempt to conceal the specific unapproved language FR Lewis used in soliciting the unapproved organizations.

d. Despite Capital One's instructions to cease all solicitations, FR Lewis again sent solicitation materials containing unapproved, deceptive language to unapproved prospects.

30. Under the terms of the Broker Agreement, FR Lewis' actions constituted willful misconduct and gross negligence and rose to the level of a breach of Applicable Law through the use and/or misuse of marketing materials that were not approved by Capital One. As such, Capital One rightfully terminated the Broker Agreement for cause under Sections 9.3 (a) and (h)(ii).

31. Moreover, since terminating the Broker Agreement, Capital One has uncovered more instances of misconduct by FR Lewis. For example, FR Lewis has repeatedly solicited unapproved organizations and, in doing so, it has used deceptive language that was neither approved nor condoned by Capital One. In several such instances, FR Lewis solicited organizations that were included on the affinity exclusivity lists of other Capital One brokers and/or that were engaged in ongoing negotiations with Capital One, thus interfering with Capital One's contractual relationship with other brokers and its business expectancies with potential affinity program participants.

32. Under Section 3.1 (a)(ii) of the Broker Agreement, Capital One agreed to make Broker Bounty Payments of $15 per credit card account for each new credit card account activated and used by members of the organizations on the Affinity Exclusivity List for a period of four (4) years following termination of the Broker Agreement.

33. Despite the language of the Broker Agreement, FR Lewis contends that it should receive Broker Bounty Payments of $25 per credit card account for the next five (5) years, not

only in connection with new credit card accounts opened by members of the ten (10) organizations on the Affinity Exclusivity List, but also in connection with new credit card account activated and used by members of the eleven (11) new organizations that it contends should be added to the Affinity Exclusivity List by Capital One.

34.     Under Section 3.2 of the Broker Agreement, Capital One agreed to pre-pay, during the Initial Term only, $10,000 of Broker Bounty Payments upon execution of any agreement between Capital One and an organization on the Affinity Exclusivity List that is approved for participation in the Affinity Card Program.  These payments are referred to as Broker Earn Out Bonus payments by the Broker Agreement.

35.     Section 9.1 defines the Initial Term as the time period between the Effective Date of the Broker Agreement and December 31, 2010, "unless sooner terminated as provided herein."

36.     The Broker Agreement and, thus, the Initial Term were terminated on June 30, 2010.  Therefore, Capital One is not obligated to make any Broker Earn Out Bonus payments after June 30, 2010.

37.     Capital One seeks guidance from the Court in connection with how it must proceed under Sections 3.1 (a)(ii) and 3.2 of the Broker Agreement now that the Broker Agreement has been terminated and the parties disagree as to their respective rights and responsibilities.

## COUNT I – DECLARATORY RELIEF

38.     Capital One incorporates by reference the allegations contained in the preceding paragraphs above as though fully set forth herein.

39.     The Broker Agreement was terminated on or around June 30, 2010.

40.     Under the terms of the Broker Agreement, Capital One has agreed to make Broker
Bounty Payments of $15, not $25, for each new credit card account activated and used by
members of the organizations on the Affinity Exclusivity List for a period of four (4), not five
(5), years following termination of the Broker Agreement.

41.     The Broker Agreement requires that the parties mutually agree to the addition of
affinities to the Affinity Exclusivity List. Capital One has not agreed to add to the Affinity
Exclusivity List the eleven (11) new organizations that FR Lewis contends should be added to
the Affinity Exclusivity List. As such, the eleven (11) proposed organizations are not part of the
Affinity Exclusivity List.

42.     The Broker Agreement does not require Capital One to pay any Broker Bounty
Payments in connection with organizations not included on the Affinity Exclusivity List.

43.     Further, the Broker Agreement does not require Capital One to pay any Broker
Earn Out Bonus payments following termination of the Broker Agreement.

44.     Therefore, Capital One requests, and the interests of the parties to this action
require, a judicial determination that Capital One is only obligated to pay Broker Bounty
Payments of $15 per activated and used credit card account associated with the ten (10)
organizations that are on the Affinity Exclusivity List for a period of four (4) years after
termination of the Broker Agreement, which commenced on June 30, 2010.

45.     Capital One requests, and the interests of the parties to this action require, a
judicial determination that Capital One is not obligated to pay any Broker Bounty Payments
associated with any organizations that are not currently included on the Affinity Exclusivity List,
including the eleven (11) organizations that FR Lewis proposed be added to the Affinity
Exclusivity List.

9

46.     Capital One requests, and the interests of the parties to this action require, a judicial determination that Capital One is not obligated to pay any Broker Earn Out Bonus payments following termination of the Broker Agreement.

47.     A declaratory judgment is necessary for the purpose of settling and affording relief from uncertainty with respect to the rights, status, and future legal relations between Capital One and FR Lewis.

## PRAYER FOR RELIEF

WHEREFORE, Capital One respectfully prays that the Court enter judgment determining and declaring that:

(A)     The ten (10) organizations currently listed on the Affinity Exclusivity List complete the Affinity Exclusivity List and no other organizations should or could be added to the Affinity Exclusivity List and Capital One is not obligated to pay any Broker Bounty Payments in connection with organizations that are not included on the Affinity Exclusivity List;

(B)     Capital One is only obligated to pay Broker Bounty Payments of $15 per activated and used credit card account associated with the ten (10) organizations that are included on the Affinity Exclusivity List;

(C)     Such payments are owed for a period of four (4) years following Capital One's termination of the Broker Agreement, which occurred on June 30, 2010; and

(D)     Capital One is not obligated to pay any Broker Earn Out Bonus payments following termination of the Broker Agreement. Capital One also demands any such further relief, including costs and reasonable attorneys' fees, as the Court deems just and appropriate.

Dated: August 4, 2010                    Respectfully submitted,

                                         CAPITAL ONE BANK (USA), N.A.

By: _____

Bryan A. Fratkin (VSB No. 38933)
Seth A. Schaeffer (VSB No. 74509)
McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
Telephone: (804) 775-1000
Facsimile:  (804) 775-1061
bfratkin@mcguirewoods.com
sschaeffer@mcguirewoods.com

*Counsel for Plaintiff Capital One Bank
(USA), N.A.*